JOHN P. and SAMUEL PARKER *vs.* A. J. CARTWRIGHT,
    Trustee of Queen Emma's Estate; ALBERT K. KUNUI-
    AKEA; E. A., H. G., and F. BURCHARDT, and J.
    McGUIRE, comprising THE KAHUA RANCH COM-
    PANY.

.        APPEAL IN EQUITY FROM MR. JUSTICE DOLE.

SPECIAL TERM, MARCH, 1889.

JUDD, C.J., McCULLY, PRESTON, BICKERTON and DOLE, JJ.

On a bill to compel the specific performance of the following covenant
    in a lease :

It is understood and agreed upon between the parties to the above
    lease that Allen and Stackpole shall have the privilege of re-
    newal, subject, however, to a new agreement:

Held, that the covenant was uncertain in its terms and therefore
    equity will not order its enforcement.

"Subject to a new agreement" means subject to the formation of a
    new agreement between the parties as to term, rental, etc., and it
    does not mean subject to the mere formal signing of a new
    instrument renewing the old lease with all its covenants except
    that of renewal.

DECISION OF MR. JUSTICE DOLE, APPEALED FROM.

The bill alleges that the defendant, Cartwright, as attorney
in fact of Emma Kaleleonalani, since deceased, testate, delivered
on January 1st, 1879, a lease signed and sealed by said defen-
dant on the one part and Allen and Stackpole on the other part
whereby the Ahupuaa of Kawaihae, on the Island of Hawaii,
was leased to said Allen and Stackpole for a term of ten years
thereafter at an annual rental of $450 and taxes, excepting cer-
tain reservations therein named, with a covenant that the
lessees should have the privilege of renewal of said lease, sub-
ject, however, to a new agreement therefor, and that the said
lease was on July 1st, 1883, with the written consent of said
Cartwright assigned by the said lessees to the plaintiffs, who
still occupy the demised premises under the same; that the

said Cartwright is the devisee of the said premises in trust to pay the income thereof to said defendant, Kunuiakea, during his lifetime, and at his death to convey the same to his issue, if any, otherwise to the Queen's Hospital; that the said Cartwright, regardless of the plaintiffs' rights under the said covenant, has executed a lease of the said premises for a term of fifteen years from January 1st, 1889, at an annual rental of $1,500, to E. A. Burchardt, A. G. Burchardt, F. Burchardt and John McGuire, partners under the style of the Kahua Ranch Company, defendants as aforesaid, and that the said company took the said lease with actual knowledge that the plaintiffs held the said premises under the first named lease and that they were of peculiar value to the plaintiffs besides their intrinsic value, from the fact that they join other land of the plaintiffs, used by them in the ranching business, and that the plaintiffs desired and intended to renew their said lease; that the said company might have ascertained from the plaintiffs the existence of the said covenant of renewal. The bill further alleges that the said premises have a peculiar value to the plaintiffs as aforesaid; that ever since the said assignment to them of the said lease they have desired and intended and still desire that the said lease be renewed to them and that a new agreement therefor be made pursuant to the said covenant, and that they have requested the said Cartwright to execute with them such agreement, and that without intending to waive their rights thereto, they have offered to said Cartwright to take a lease of the said premises for a further term of fifteen years at an annual rental of $600.

The plaintiffs claim that under the allegations, the said company are chargeable with notice of the said covenant and of the plaintiffs' interest therein, and that they have taken their said lease subject to the plaintiffs' rights under the same, and pray that they be decreed to surrender their said lease to the said Cartwright and that he be decreed to accept the same and to execute to plaintiffs a lease of the premises according to the said covenant.

All of the defendants filed answers to the bill of complaint.

The defendant Cartwright in his answer admits the lease to Allen and Stackpole with the exception of the alleged covenant of renewal, which he denies. He further admits the assignment of the said lease to the plaintiffs and that they are still occupying the said premises under such lease; also that he is the devisee of the said premises in trust as alleged by the bill, and that a lease was executed and delivered to the Kahua Ranch Company, defendants, as alleged by the bill, but states, in explanation thereof, that he does not know of his own knowledge whether or not said premises adjoin plaintiffs' other land, or that plaintiffs desired or intended to obtain a new lease, but that in the year 1887 he notified W. F. Allen, the agent of the plaintiffs, that other persons were desirous of leasing the said premises at the expiration of the existing lease and that he would receive bids for a new lease; that thereupon the said Allen, as such agent, made an offer to lease the said premises for a term of fifteen years at an annual rental of $600, which he, the said Cartwright, refused; that thereafter he received from the said Kahua Ranch Company an offer for a term of fifteen years at an annual rental of $1,500 and taxes, which offer he accepted and executed the lease to the said company as aforesaid, and thereupon notified the said Allen thereof. The said answer further admits the plaintiffs' demand for a renewal of the existing lease under the alleged covenant for renewal, a few weeks before the beginning of these proceedings, and alleges that no such covenant is contained in the counterpart of the said first lease which is in his possession, and that neither the said lease nor the alleged covenant of renewal are recorded in the Registry of Deeds.

The Kahua Ranch Company, defendants, in their answer admit the execution of the said lease in their favor, and that at and before the execution thereof they knew that the plaintiffs were in possession of the premises and that they were informed that plaintiffs held possession under a lease from Cartwright, defendant, acting for Emma Kaleleonalani, but did not know

the terms thereof, further than that it was about to expire, but deny that they knew that the premises were of peculiar value to the plaintiffs as alleged in the bill.    Their answer further states that before the execution of the said lease they did not know and had not heard of the said alleged covenant for renewal of the said lease, nor of the intention or desire of the plaintiffs to enter into an agreement for such renewal; that they were informed that the said Cartwright, defendant, desired that bids should be made by persons wishing to lease the premises from the expiration of the existing lease; that they are informed and believe that the said Allen, the agent of the plaintiffs, received similar information from the said Cartwright, and was told by him that other persons were seeking to lease the premises and that a new lease therefor would be given to the highest bidder, and that thereupon the said Allen tendered a bid therefor, as aforesaid, and that they, the said company, being ignorant of the offer made by the said Allen, made their bid for the said lease as aforesaid, which was accepted and a lease in conformity therewith was thereupon executed, and that the said Allen and the plaintiffs during the pendency of the negotiations for the said lease, and long after the execution thereof, did not claim nor intimate that they were entitled to a renewal of the plaintiffs' said lease, nor that a covenant of renewal was contained therein; that on or about November 20, 1887, the said Allen, in conversation with the said E. A. Burchardt, expressed much disapproval of the action of Cartwright in the matter, but did not claim nor intimate that the plaintiffs were entitled to a new lease under the covenant of renewal, and said that they would never have paid such rent as had been offered by the company, and expressed surprise that the company had been willing to offer so much; and they claim that they have acted in good faith in the matter; that the action of the plaintiffs in tendering a bid for a new lease and their conduct in the premises was inconsistent with the supposition of the existence of a covenant for renewal; that the alleged covenant is void for uncertainty; that they are not chargeable with notice thereof, and that since

the execution of the said lease to them they have, relying upon the same, arranged their business with the expectation of occupying the premises in question on January 1st, 1889, and are greatly prejudiced by reason thereof.

The answer of Albert Kunuiakea, defendant, was merely formal.

The covenant, which is the basis of this controversy, is as follows :

"It is understood and agreed between the parties to the above lease that Allen and Stackpole shall have the privilege of renewal, subject, however, to a new agreement.

(Sig.)      ALEX. J. CARTWRIGHT,
"     ALLEN & STACKPOLE."

This is written in Cartwright's handwriting immediately below the signatures of the original lease from Cartwright to Allen and Stackpole, which lease was delivered to Allen & Stackpole and went into the possession of the plaintiffs upon the assignment of the lease to them. The same lease contains the following marginal endorsements :

"Permission is hereby given to W. F. Allen and C. E. Stackpole to assign this lease to Samuel Parker and Jno. P. Parker, subject to the covenants herein.

(Signed)      KALELEONALANI.
By her attorney in fact,      ALEX. J. CARTWRIGHT.
Witness,      ALEX. J. CARTWRIGHT, JR."

And :

"The within lease is hereby assigned to John P. and Samuel Parker, July 1st, 1883.

(Signed)      ALLEN & STACKPOLE."

Considerable testimony was taken on both sides, and the defendants contended that under the pleadings and evidence : .

1. The alleged covenant for renewal is void for uncertainty.

2. The plaintiffs, by making proposals for a new lease obviously outside of the said alleged covenant for renewal, with-

out at the time claiming any benefit or preference under the same, waived whatever rights they may have had under such covenant.

3. The plaintiffs, by their silence in regard to the said alleged covenant of renewal, at the time of the said lease to the Kahua Ranch Company and afterwards, are estopped from claiming any benefit therefrom.

4. The alleged covenant for renewal, not being recorded, and the Kahua Company being ignorant of its existence, they should not be affected by it.

Upon the first point, that the alleged covenant for renewal is void for uncertainty, it is argued by counsel for defendants that the words " subject, however, to a new agreement," at the end of the covenant, introduce ambiguity into the document and prevent it from being a simple and definite covenant for renewal of the lease, but make it an agreement for a new lease upon terms to be agreed upon in the future, which, as counsel say, could not be construed nor enforced.

In considering this question, very little assistance is afforded by the evidence. Mr. Cartwright cannot remember anything about the covenant or its execution, and Mr. Allen cannot remember when it was made, but testifies that it was done at his request, and that he should hardly have taken the lease without it. If we leave out the words "subject, however, to a new agreement," there is no question that it would be a covenant for a new lease upon the terms of the old one. *Tracy vs. Albany Exch. Co.*, 7 N. Y., 474. Do these words change the meaning ? If they make it mean that the tenants are entitled to a new lease upon terms to be agreed upon, the contention of defendants' counsel, that it is void for uncertainty, is certainly sound. The document is capable of this meaning; is it capable of any other ? I do not see how it can be construed into an agreement to give the tenants a right to make a bid for a new lease; it contains no words which import such a meaning. There is only one other possible construction open to consideration, and that is that the words mean an agreement for renewal of the existing

lease, that is to say, they form an agreement for a new lease upon the expiration of the old, upon the same terms with the old. I think the words are capable of this interpretation: the words "subject, however, to a new agreement," may mean either subject to terms that may be agreed upon, or subject merely to the conditions of a new lease to be executed for a similar term and similar conditions with the old one. Under a covenant for renewal a "lessor is bound to make another lease of the premises." Taylor's Landlord and Tenant, 332, 340. Such new lease on the same terms with the old may be meant by the words "new agreement." If the document is capable of two interpretations, I find by all the authorities that it must be construed in that sense in which it will have some effect. "When a cause is capable of two significations, it should be understood in that which will have some operation, rather than in that in which it will have none." *Archibald vs. Thomas*, 3 Cowen, 290. And Lord Mansfield said, in *Pugh vs. Duke of Leeds*, Cowp., 725 : "The ground of the opinion and judgment which I now deliver is, that 'from' may, in the vulgar use, and even in the strictest propriety of language, mean either inclusive or exclusive; that the parties necessarily understood and used it in that sense which made their deed effectual; that the courts of justice are to construe the words of parties so as to effectuate their deeds, and not to destroy them ; more especially where the words themselves abstractedly may admit of either meaning." The parties could not have intended a sham agreement—a document which was a covenant only in form, but void in reality. The alleged covenant of renewal was part of the inducement to Allen and Stackpole to take the lease ; it was understood by Allen to be a valuable consideration. Cartwright must have intended that he should so understand it. Therefore, if the document is capable of two constructions, that one must be adopted in which the promising party intended the other to understand it, if the other did so understand it, or as Chancellor Kent expressed the rule : " The true principle of sound ethics is to give the contract the sense in which the

person making the promise believed the other party to have accepted it, if he in fact did so understand and accept it." 2 Kent, 557 ; Chitty's Contracts, 74 ; and Paley's Moral Philosophy. The old rule, that in the construction of instruments in cases of ambiguity, the words must be taken most strongly against the party that used them and most favorably to the other party, may also be applicable to this case, and if so, it supports the conclusion which I have adopted, that the document in question is a covenant for the renewal of the original lease at the option of the lessees.

The second point raised by the defense is that the plaintiffs, by making proposals for a new and dissimilar lease without claiming any preference or privilege under the renewal covenant, waived whatever rights they may have had under it.

If Allen's offer for a new lease for fifteen years at $600 a year had been accepted, it would have been a waiver of the covenant of renewal, unless it could have been avoided on the ground of mistake, but it was refused. Although it is doubtful if an agreement within the statute of frauds, as this is, may be proved to have been orally waived in an action at law, yet in equity such proof may be admitted; but such parol waiver must " be express and of such a character as to leave no reasonable doubt as to the intention of the parties." *Rodman vs. Gilley*, 1 N. J. Eq., 320, 328. In the case before the Court there is no evidence of any intention on the part of the plaintiffs to waive their rights except as such proposition for a fifteen year lease might be so regarded; but both Allen and S. Parker appear to have forgotten the covenant of renewal at the time this proposition was made; and in any case it would not have the effect of a waiver unless it had been accepted and entered into. When Mr. S. Parker returned from San Francisco, in October, 1887, he first ascertained that the land had been leased to the Kahua Ranch Company, and shortly afterwards, in the month of December, he informed himself of the covenant for renewal. At that time there were negotiations going on through Mr. Allen for an exchange of these premises with another land which

Parker had a prospect of obtaining. In January, 1888, Parker had an intervew with F. Burchardt, at Kahua, upon the matter of the proposed exchange, at which time he told F. Burchardt that he didn't know but he had a clause of renewal, and if they couldn't come to terms he might apply for a new lease—presumably under such covenant of renewal. About February 10, 1888, S. Parker had an interview with the Burchardts upon the same subject at Kawaihae beach, and said, during the conversation, if negotiations came to nothing he might try to get a renewal of the lease. These expressions of Mr. Parker are inconsistent with the theory of waiver, and they were made with reasonable promptitude after he had an opportunity to examine his lease and inform himself about the covenant for renewal.

The same circumstances are also unfavorable to the defense of estoppel; there was no concealment of the facts by the plaintiffs after the return of S. Parker from San Francisco; neither was there a "standing by" and allowing the Kahua Ranch Company to spend money or arrange their business upon the strength of their deed from Cartwright. In January and February, 1888, the negotiations for the exchange were going on and there is no pretense that at that time the Kahua Ranch Company had seriously conformed their business arrangements to the expected acquirement of the premises in question, nearly a year afterward; yet that was the time when S. Parker intimated to them that he thought he had a covenant of renewal, and that if they couldn't come to terms he might take advantage of it. This was not keeping silence nor "standing by," and whatever expenditure or arrangements the company afterwards made, they made upon their own responsibility and peril. Moreover it appears that in the month of December, 1887, F. Burchardt was informed by a man named Stupplebeen, who he was aware had been a clerk of Stackpole, that there was a renewal clause, and he says he placed no reliance upon what he said and when he seemed to be anxious about it, "I had nothing more to say to him." It is also a matter of evidence that the Kahua Ranch Company were perfectly well aware that the

plaintiffs were in possession of the premises in question under a lease from Cartwright, but made no effort whatever to learn the terms of the lease, either from the plaintiffs or from Cartwright, on the contrary, they seemed desirous to keep their ignorance as to the terms of such lease intact. Under such circumstances, both by the knowledge that the plaintiffs were in possession under a lease, and the information from Stupplebeen, the Kahua Ranch Company were put upon their inquiry and should have sought for information from the parties in possession, there being no lease on record, as to their title; their ignorance, therefore, of the covenant of renewal was due to their own deliberate negligence and not to any concealment by the plaintiffs, and they may not "build an estoppel upon their own default." *Hill vs. Epley*, 31 Penn., 335. "One is not relieved, who had the means of becoming acquainted with the extent of his rights." *Ibid.*, 334. I think that this meets the whole argument upon the ground of estoppel. The silence of both Allen and S. Parker in regard to the covenant of renewal at the time the bid was made for a fifteen year lease, was due to forgetfulness, and the plaintiffs promptly informed the company of the fact of the covenant when they ascertained it, and before the company had become prejudiced by acting in ignorance of it. 1 Story's Eq. Jur., Sections 140–142, and *Kelly vs. Salori*, 9 M. & W., 53. The case of *Galbraith vs. Lunsford*, 27 Cen. L. J. 503, which Mr. Smith, counsel for the Kahua Ranch Company, referred to upon the question of estoppel for acquiescence arising from ignorance of facts of which the parties might have informed themselves, shows a very long period of acquiescence amounting to inexcusable laches, extending over many years, during which the defendant's representative made expensive improvements. The circumstances of that case bear little analogy to the one before this Court and do not make it a precedent for it. No benefit by estoppel can be claimed in favor of the defendant, Cartwright, both for the reasons set forth above, and because there is no testimony adduced showing that he has acted under the lease to the Kahua Ranch Company in any way that would prejudice his *cestui que trust*, should the lease be cancelled.

Upon the fourth ground of defense, that the covenant for renewal not being recorded, and the Kahua Ranch Company being ignorant of its existence, they should not be affected by it, I am compelled to find under their admissions that they knew that the plaintiffs were in possession under a lease—that they had sufficient notice to protect the previous lease. They were put upon their inquiry and might have ascertained the facts by going to the plaintiffs; they preferred to work in the dark and take their chances. *Rives, Admr. vs. Makulu*, 2 Hawn., 166, *Davis vs. Spencer*, 3 Hawn., 274, 283, and *Achi vs. Kauwa*, 5 Hawn., 298. "All the authorities agree that there is no difference in legal effect between actual and constructive notice." *Hill vs. Epley*, 31 Penn. St., 335. "It is established law in Pennsylvania, that whatever puts a party on inquiry amounts to notice, provided the inquiry becomes a duty, as it always is with a purchaser, and would lead to the discovery of the requisite fact by the exercise of ordinary diligence and understanding." *Ibid.* 336.

There is nothing unfair in the covenant for renewal; the fact that the land could now be leased at a much higher rent than was reserved by the lease to Allen and Stackpole, is not a ground which may influence a court of equity to disturb a *bona fide* contract.

The plaintiffs made a written demand upon Cartwright for a renewal of their lease several weeks before it expired, which seems to have been reasonable notice as to time. Under all the circumstances I think that they are entitled to such renewal, and the Kahua Ranch Company, defendants, must hold their lease subject thereto.

OPINION OF THE FULL COURT, BY JUDD, C.J.

This is a bill in equity to compel the specific performance of a covenant in a lease. For statement of the bill and answers we refer to the opinion of Mr. Justice Dole appealed from.

The controlling question in this case is whether the covenant under discussion is one whose performance is capable of being

compelled by the Court. It reads: "It is understood and agreed upon between the parties to the above lease that Allen & Stackpole shall have the privilege of renewal, subject, however, to a new agreement."

It is a settled rule that courts of equity will not specifically enforce a contract that is either not certain in its terms, nor capable of being made certain. Bigelow on Equity, p. 195; 1 Story's Eq. Jur., Section 769; *Lord Walpole vs. Lord Oxford*, 3 Ves., 420, where Lord Chancellor Loughborough said: "I lay it down as a general proposition, to which I know no limitation, that all agreements in order to be executed in this court must be certain and defined."

Fry on Specific Performance, Section 229, says: "It will be obvious that an amount of certainty must be required in the specific performance of a contract in equity greater than that demanded in an action for damages at law." The reason given is, that at law the conclusion that a defendant has not performed his contract may be arrived at without any exact consideration of the terms of the contract; but in equity it must appear not only that the contract has not been performed, but what is the contract which is to be performed. "The certainty required must be a reasonable one, having regard to the subject matter of the contract and the circumstances under which and with regard to which it was entered into." *Id.*

"It is better, for avoiding fraud, to suffer a party to escape out of a contract which he may have intended to make than to enforce it upon a conjecture that such was the intent of the parties." *Iggulden vs. May*, 9 Ves., 325. Taylor's Landlord and Tenant, Section 333.

"The contract which is sought to be specifically executed ought not only to be proved, but the terms of it should be so precise that neither party could reasonably misunderstand them. If the contract be vague and uncertain, a court of equity will not exercise its extraordinary jurisdiction to enforce it, but will leave the party to his legal remedy." *Colson vs. Thompson*, 2 Wheat., 336.

The contract must be certain in its terms.    *Preston vs. Preston,* 95 U. S., 200.

What is the meaning of the covenant in question?    Of the first part, up to the words "subject, however, to" etc., there is no doubt that it is a simple covenant for a renewal, and that it would be satisfied by a renewal for one term at the same rent.

But this "privilege of renewal" is coupled with the condition "subject, however, to a new agreement."

The words "subject to" mean subordinate to or conditioned upon.    "However," in this connection, has the meaning of "notwithstanding," and the whole phrase means that the privilege of renewal is conditioned, notwithstanding the promise to renew the lease, upon a "new agreement."    That the words "new agreement" in this connection do not mean a new "lease" upon the same terms is evidenced (1) by the use of the word "agreement," and not "lease."    (2) If a simple renewal was what was covenanted for, there would be no necessity to add that it should be subject to the execution of a new lease, for the lessee would in such a case be entitled to the execution of a new lease without the addition of these words.    The plain and usual definition of the word "agreement" is "the consent of two or more persons concurring respecting the transmission of some property, right or benefit, with a view of contracting an obligation."    Bouvier's Law Dictionary.    And the words "new agreement" must mean a new consent of the contracting parties as to the terms of the lease.

It was conceded in argument by plaintiffs' counsel that if the words create a condition precedent for the formation of a new agreement, then specific performance cannot be enforced, as the covenant is too vague and indefinite to justify the Court in undertaking to conjecture what may have been intended.    But if it is a covenant for the execution of a new instrument which shall merely renew the terms of the old lease, then the plaintiffs should have the relief prayed for.    We consider this to be the law.

We are unable to find a case where exactly the same language is employed as in the lease before us.    The two nearest to it are

*Duffield vs. Whitlock*, 26 Wend., 56; and *Abeel vs. Radcliffe*, 13 Johns., 297. In the first of these cases the lease contained a covenant that at the expiration of the term the buildings erected by the tenant on the premises should be appraised, and that the lessor should either pay the appraised value or grant a new lease of the premises for the term of twenty years upon such terms as he might think proper, and as might be approved by the lessee. Chief Justice Nelson said : "It would be difficult for either party to have reserved a more unqualified discretion over the subject matter than is here found. No data are given by which either is bound, except the term of twenty years; every other ingredient which enters into and constitutes· an indenture of lease is left to the mutual volition of the parties; the one is to grant, if at all, upon such terms as he thinks proper; the other to accept or not, at pleasure."

In *Abeel vs. Radcliffe*, the covenant was that the lessee shall at the expiration of the term pay for the buildings at the appraisal of three indifferent men to be chosen by the parties; or " let the said lot for a yearly rent to be fixed by three indifferent men, in like manner to be chosen by the said parties." The Court said : " I am of opinion that this covenant is totally void for uncertainty." " Every agreement which is required to be in writing, by the Statute of Frauds, must be certain in itself, or capable of being made so by a reference to something else, whereby the terms can be ascertained with reasonable precision, or it cannot be carried into effect. In the case before us the parties have omitted to state the terms for which the new lease was to be given; and unless the Court makes a contract for them, the defendant is without a remedy—at least upon the case now presented to us."

In *Rutgen vs. Hunter*, 6 Johns. Ch., 216, the lease contained a covenant that the lessee    *    *    *    should renew the said lease, or re-demise the lot, at such rent and upon such terms as may be agreed upon by and between the said parties. Chancellor Kent said : " To re-demise the lot at such rent and upon such terms as might be agreed on, is indeed quite analo-

36

gous to let the lot for a yearly rent to be fixed by men to be mutually chosen, and which was held in *Abeel vs. Radcliffe* to be void for uncertainty, as no term was fixed."

In *Whitlock vs. Duffield*, 1 Hoffman's Ch. R., 110, the lease contained a clause that at the end of the term the buildings should be taken at a valuation, or the lessors should grant a new lease for the term of twenty years, upon such terms as such lessors, heirs, etc., might think proper and be approved of by the tenant. Judge Hoffman says: " In the case before the Court, the contract is not to renew the old lease, but to grant a new one for the term of twenty-one years upon such terms as the lessors shall think proper, and the lessees shall approve. I agree that this is equivalent to a covenant to grant a lease upon such terms as the parties shall agree upon. It is precisely the same as if it was an original contract for a lease. The term is defined, and everything else of rent and covenants left uncertain. As to these, we have the express decision of the Supreme Court that at law it is void ; and in the cases in this Court which I have stated, there is not a decision to support a bill for performance."

In *Morrison vs. Rossignol*, 5 Cal., 65, the Court held that where a clause of renewal in a lease discloses no certain basis for the ascertainment of the rent to be paid, such clause shall. be held void for uncertainty.

The covenant in *Pray vs. Clark*, 113 Mass., 282, that "the said Clark agrees to renew the lease of the above premises upon the expiration of the above term, rent to be proportioned to the valuation of the premises at said time," was commented upon by the Court as follows : " The agreement sought to be enforced is not complete in all its terms. It is not simply for a renewal of the lease. The agreement does not fix the rate of rent, and does not permit it to be fixed by the reservation in the original lease. The agreement is too uncertain and vague in its essential terms to justify the Court in undertaking to conjecture what may have been intended, for the purpose of enforcing upon the parties some contract of the kind to which their writing relates. Bill dismissed."

Counsel for plaintiffs has cited many English cases, some of which we will notice.

*Foster vs. Wheeler*, L. R. 36 Ch. D., 695. An agreement was made between W. and F., that W. would enter into an agreement with O. for a lease at a certain rent for such terms and subject to such covenants as O. should approve, and would accept such lease and execute a counterpart. The Court said : " I assent to the proposition on behalf of the defendant that an agreement (such as occurs here) to enter into an agreement cannot be ordered to be specifically performed, on the ground that before the Court can properly make a decree of that character it must be satisfied that the parties have contracted to do something of a definite character, something ascertained, or which can be readily ascertained ; and something, too, which can be done by the simple methods within the control of the Court, and which the Court can supervise and, if need be, aid." The Court held that no concluded agreement had been entered into.

In *Rossiter vs. Miller*, L. R. 3 Appeal Cases, 1138, Lord Chancellor Cairns quotes approvingly from *Chinnock vs. Marchioness of Ely*, 4 De G. J. & S., 638, that " if there had been a final agreement, and the terms of it are evidenced in a manner to satisfy the Statute of Frauds, the agreement shall be binding, although the parties may have declared that the writing is to serve only as instructions for a formal agreement."

In the case before us, how can it be said that the parties had arrived at a final agreement when the words of the covenant are that it is " subject to a new agreement ? "

We next refer to *Winn vs. Bull*, L. R. 7 Ch. D., 29. Here by a written agreement the defendant agreed with the plaintiff to take a lease of a house at a certain rent, " subject to the preparation and approval of a formal contract." No other contract was ever entered into between the parties.

Held, that there was no final agreement of which specific performance could be enforced against the defendant.

Jessel, M. R. (1877), says : " It comes, therefore, to this, that where you have a proposal or agreement made in writing ex-

pressed to be subject to a formal contract being prepared, it means what it says : it is subject to and is dependent upon a formal contract being prepared. When it is not expressly stated to be subject to a formal contract, it becomes a question of construction, whether the parties intended that the terms agreed on should merely be put into form, or whether they should be subject to a new agreement, the terms of which are not expressed in detail. The result is, that I must hold that there is no binding contract in this case, and there must, therefore, be judgment for defendant."

It is very significant as bearing upon the construction of the lease before us, that the learned Master of the Rolls uses the very language of the covenant under discussion—" subject to a new agreement "—and holds that if the terms " should be subject to a new agreement, the terms of which are not expressed in detail," there is no binding contract.

Having found that the parties in making this covenant left the term of the renewal, the rent to be paid, etc., to be fixed by a new agreement to be arr.ved at between the parties at the end of the original term, there is no definite contract which the Court can enforce.

It is said that as a covenant for a " renewal " means a renewal of the old lease with all its terms, rents and covenants except that of renewal, this would be nullified by the latter part of the covenant in ·question, which provides that the term, rents and covenants shall be such as may be agreed upon by the parties.

This may be so. The covenant may have been drawn without the signers being aware of the effect of the language they used. However, we must construe the covenant by itself, without reference to the understanding of the parties other than as we gather it from the instrument itself. It is doubtful if the covenant can mean anything more than a preference to the lessee in proposals for a new lease. But we are not compelled to consider this, since we hold that the covenant is too indefinite to compel the covenantor to specifically perform it. Having reached this conclusion, it does not become necessary to con-

sider the other positions taken by the defense, to wit, the estoppel and waiver. The decree below must be reversed, and the bill dismissed, with costs.

*A. S. Hartwell* and *P. Neumann*, for plaintiffs.

*C. Brown*, for A. J. Cartwright and A. K. Kunuiakea.

*W. O. Smith*, for Kahua Ranch Company.

---

### DISSENTING OPINION OF DOLE, J.

Upon the question of construction, which is the only question raised by the foregoing opinion of the majority of the Court, I still adhere to my former opinion. The word "agreement" is not only often used by unprofessional persons for the document containing an agreement, but such use also is authorized by the dictionaries. The parties, therefore, under the words of the covenant, may easily have agreed to a renewal of the existing lease, and have made it "subject to a new agreement," *i.e.*, subject to a new lease, instrument or document carrying out the renewal or extension agreed on.