MARY S. CARTER, Executrix, and A. W. CARTER, Executor, of the Will of CHARLES L. CARTER, Deceased, *v.* MANHATTAN LIFE INSURANCE COMPANY.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED OCTOBER 8, 1896.        DECIDED JUNE 16, 1897.

FREAR AND WHITING, JJ., AND CECIL BROWN, ESQ., OF THE BAR, IN PLACE OF JUDD, C.J., DISQUALIFIED.

An error of misjoinder of counts in contract and tort is cured by the submission of the case to the jury upon the count in tort alone.

A new trial will not be granted because of an admission of incompetent testimony, where, in view of the character of such testimony and the fact that the matter sought to be proved thereby was proved by other testimony which was unobjected to and uncontradicted, it does not appear that the party against whom the incompetent testimony was adduced was. prejudiced thereby.

It is not error to permit a witness to finish a statement, although relating to irrelevant matter, where no objection has been interposed to his making a partial statement. In such case an objection should be made in the first place to the admission of any of the irrelevant testimony, or under some circumstances a motion might be made to strike it all out. A party should not be allowed to receive the part favorable to himself and have the remainder excluded.

As tending to show that an agent retained an application for insurance in order that he might forward a batch of applications together, and not because of an omission in the application, it is competent to show that he retained other applications in which there were no omissions and which were of different dates, some being of nearly the same date as the application in question, and that he forwarded them all together.

A life insurance company is liable for the negligence of its agent in
  failing to forward an application for insurance within a reasonable
  time, and if in consequence of such negligence the application is
  not accepted prior to the death of the applicant, and if it would
  have been accepted prior thereto but for such negligence, the
  measure of damages is the amount for which the policy would
  have been issued.

### OPINION OF THE COURT BY FREAR, J.

On November 12, 1894, Charles L. Carter applied to the de-
fendant, through its agent, R. B. Brenham, in this city, for in-
surance of $5000 upon his life, the "policy to date April 30,
1895, Term Insurance until then," as stated in the application,
and at the same time he gave the agent a promissory note for
$155.50 payable April 30, 1895, and received from him a con-
ditional receipt for that amount as a "deposit upon the applica-
tion" to "be applied on account of the payment of the first pre-
mium, provided that the application be accepted" by the de-
fendant, "and a policy issued in accordance therewith," other-
wise to be returned to the applicant. The agent retained the
application until January 5, 1895, when he delivered it to Mr.
J. H. Paty, defendant's general agent for the Hawaiian Islands,
by whom it was forwarded the same day to Mr. John Landers,
defendant's district manager at San Francisco, who forwarded
it to the defendant in New York. The note was discounted and
half its face value paid to Mr. Paty as the defendant's share
thereof, that is, after deducting the agent's commissions. The
applicant died January 7, 1895, from the effect of wounds in-
flicted by a person or persons unknown. On January 21, 1895,
the defendant, having received the application, but having also
prior thereto received by telegram, according to the plaintiffs'
theory, information of the applicant's death, addressed a regis-
tered letter to the applicant declining the application. The
plaintiffs thereafter brought this action against the defen-
dant upon three counts, (1) upon a contract of term insurance,
(2) upon a contract to insure, and (3) for the negligence of de-
fendant's agent in failing to forward the application within a

reasonable time. The case was tried before a jury and was submitted to them upon the count in tort alone and the plaintiffs' evidence, the defendant not having offered any evidence, and the jury found for the plaintiffs in the sum of $5000 damages. The case is brought to this court by the defendant on a number of exceptions which will be considered in their order.

The first exception was taken to the overruling of defendant's motion, made after the jury were sworn and when the plaintiffs were about to adduce their evidence, that the plaintiffs be required to elect upon which count of their complaint they proposed to rely. The ground relied on in this court in support of the motion is misjoinder of counts in contract and tort, but opposing counsel contend that the motion when made in the Circuit Court was based solely on the ground that a single cause of action could not be declared on in more than one count, and that, since this ground is erroneous, the motion was properly denied. Let us, however, assume that the ground relied on in the Circuit Court was the same as that now relied on. The counts were, no doubt, improperly joined and a motion to compel the plaintiffs to elect upon which one they would proceed was a proper mode of taking advantage of the misjoinder. Civ. Code, Sec. 1144; *Penn. R. Co. v. Zug,* 47 Pa. 480; see also *Kerr v. Martin,* 7 Haw. 596. But the motion was renewed at the close of the plaintiffs' evidence and then they elected to rely on the count in tort and the court instructed the jury not to consider the plaintiffs' claim as stated in the other two counts. In our opinion this cured the error. See *Knightly v. Birch,* 2 Maule & Sel. 533; *Prescott v. Tufts,* 4 Mass. 146; and *Hancock v. Haywood,* 3 T. R. 433.

The second exception was taken to the admission, against defendant's objection, of Dr. Wood's testimony as to what, in his opinion, the defendant would have done with reference to the application in question, if it had not known of the applicant's death at the time it passed upon the application. The witness testified in substance, that he was a medical examiner for the defendant; that he had passed on a number of applicants for in-

surance in this Company (how many applicants or during how many years, does not appear); that he had examined the applicant and had decidedly recommended him as a first class risk; that the Company had accepted all previous risks so recommended by him with one exception, and that in the case of that exception there was a special reason appearing on the face of the report which led to the rejection of the risk, and that no such reason appeared in this case. When asked his opinion as to what the Company would have done if it had not learned of the applicant's death, the witness was expressly asked to state his opinion as based on his limited experience in connection with this Company, and in his answer which was to the effect that in his opinion the risk would have been accepted, he expressly stated that this was merely his personal opinion based upon this limited experience. It may be that the witness was not shown to be an expert in insurance matters. It may be also that, whether he was an expert or not, the opinion in question was inadmissible, on the ground that the facts upon which it was based and which were laid before the jury, were such that the jury were, in contemplation of law, as competent as any one else to form an opinion upon them. But assuming that it was error to admit the opinion and also that if this were the only witness who testified on this point the defendant would have been prejudiced by such error, notwithstanding that the facts testified to were of such a nature that the opinion could have added but little if any force to them, still, in our opinion, the defendant was not prejudiced thereby, for the same matter was proved independently of Dr. Wood's testimony, by two other witnesses, whose testimony was neither objected to nor contradicted by other testimony. The testimony of Mr. Collier, who was unquestionably an expert, was to the effect that an applicant would undoubtedly be accepted under the circumstances of this case. One of the plaintiffs, A. W. Carter, also testified that Mr. Brenham, the defendant's agent through whom the application in question was made, told him in the course of business connected with this

claim, that he had no doubt that the application would have been accepted had it been received at the home office prior to the information of the applicant's death.

The third exception was taken to the admission, against defendant's objection, of a letter from defendant's agent Brenham to its district manager Landers. The facts appear as follows: Landers' deposition was taken in San Francisco by stipulation. Upon his direct examination, which was conducted on behalf of the defendant, he testified, against plaintiffs' objection based on the ground that the testimony was hearsay, that Brenham had orally explained to him the "cause of the delay (in forwarding the application) as having been entirely owing to Mr. Carter's desires and at Mr. Carter's request." On the cross-examination, conducted on behalf of the plaintiffs, Landers produced, without any objection made on behalf of the defendant, the letter in question, which contained this clause: "The delays arising from the doctor's oversight prevented immediate forwarding of the application, and when finally complete and correct I held it for a time longer for the purpose of including it in a batch of applications, in the pardonable pride which agents take in sending in a good fat envelope of aps." The letter was a part of the deposition, though contained in a package of exhibits not attached to the deposition. At the trial the plaintiffs introduced the deposition as a whole without objection from defendant's counsel, and after it was read, defendant's counsel objected to the introduction of the letter. Let us assume, as contended for the defendant, that the admissions of an agent in regard to past transactions are inadmissible as evidence against his principal and that the letter in question is an admission of this description (See 4 Thom., Corp., Sec. 4915; 1 Mor. Corp., Sec. 540a; and 2 Shear. & Redf., Neg., Sec. 51); also that the plaintiffs made Landers their own witness by their introducing the deposition in evidence, notwithstanding the fact that the examination in chief was conducted on behalf of the defendant (See 6 Enc. Pl. & Pr. 585, 602); also that the plaintiffs could not introduce irrelevant or

incompetent evidence (the letter in question) to rebut other evidence (Brenham's oral statement) which had been introduced by themselves, whatever the rule might be if the irrelevant or incompetent evidence had been introduced by the opposite party (See 1 Thom., Trials, Sec. 699). Still, the deposition having been introduced as a whole, and plaintiffs' counsel having read the part that was unfavorable to them, without objection and apparently on the belief that there was no objection to the reading of the whole deposition, it was only just that they should be allowed to read the rest in so far as it related to matters already brought out. Granting that the letter was not admissible to rebut the evidence as to Brenham's oral statement, it was admissible to complete Landers' own statement as to what communications Brenham had made to him on the subject. A party should not be allowed to sit by and allow an opposing party to question a witness on a particular point even though it be irrelevant and then call a halt as soon as the witness has made a partial statement unfavorable to the examining party. Landers having been permitted without objection to make a partial statement of Brenham's communications to him upon this point, it was proper to permit him to finish the statement. If the deposition became the evidence of the plaintiffs because introduced by them, then both the direct and the cross-examination should be regarded as conducted by them and should be considered as direct examination. Brenham's communication by letter was not brought out by the plaintiffs for the purpose of impeaching their own witness Landers. It may be regarded as introduced to complete Landers' statement already partially made without objection. In order to exclude the letter an objection should have been made in the first place to the introduction of any evidence of Brenham's communications to Landers, or perhaps a motion might properly have been made to strike it all out. A party should not be allowed to select such evidence as suits him and exclude the rest on a particular point, especially where, as in this instance, the evidence was all written out in the form of a deposition and was

known to counsel before any of it was read to the jury. It may be added that, even if all the evidence contained in Landers' deposition upon this point had been excluded, it would not have aided the defendant, for there was ample other proof that the delay in forwarding the application was due to the agent's negligence. There was proof that the application was not forwarded until between seven and eight weeks after it was received. This alone would have raised a presumption of negligence. A. W. Carter also testified as follows: "Mr. Brenham stated (on the occasion of his offer to return the premium in pursuance of instructions from the defendant) that the application had been returned to him by the doctor two or three days after the application, and that the same remained on his desk for some time, he said, in order to get a batch of applications to send forward at the same time. The day the mail left he looked over the application and saw that the doctor had made some technical inaccuracy in his report; it didn't go forward by that mail, he thereupon took it back to the doctor, it was corrected, it lay upon his table again some time, he stated until he could get another batch, and when about to forward the same he noticed that the doctor had not filled in a date, and it was not forwarded by that mail. He waited again for a batch, and it was forwarded on the 5th day of January, the day before Mr. Carter's death." This testimony was unobjected to and uncontradicted.

The fourth exception was taken to the admission, againt defendant's objection, of the applications of two other persons, which were dated November 5 and 8, 1894, respectively, that is, shortly prior to the date of the application in question, and which were made through the same agent and forwarded at the same time, Jan. 5, 1895. These applications were, as testified by Mr. Paty, defendant's general agent for the Hawaiian Islands, part of a batch of seven applications of different dates presented to him by Brenham at the same time, January 5, 1895. They were admissible, for the purpose for which they were introduced, —not to show that because Brenham was negligent in respect of

these applications he was probably negligent in respect to the application in question, but to support plaintiffs' theory that the application in question was retained in order that a batch might be sent together. No attempt was made to show that the two applications objected to were retained for any other reason. The circumstances under which these applications were offered in evidence and objected to do not appear. Mr. Paty's testimony upon this point was apparently not objected to.

The fifth exception was taken to the admission, against defendant's objection, of certain letters written by Mr. Landers to Mr. Paty in regard to the matter in controversy. This exception does not seem to be much relied upon and in our opinion even if the letters in question were erroneously admitted, their contents were such as not to prejudice the defendant, especially in view of the other evidence in the case. They contained in substance a statement that the defendant had declined the application; an instruction to return the premium paid and take up the conditional receipt; a statement that the defendant had telegraphed asking for an explanation of the delay in forwarding the batch of applications; that the managers of other companies in San Francisco and one of defendant's prominent attorneys there confirmed the defendant's decision on the question of its liability; also a regret at the unfortunate circumstances of the case.

The sixth exception was taken to the overruling of the defendant's motion that the plaintiffs be non-suited on the grounds that the evidence did not support the count on which they relied, and that no cause of action had been proved. This exception goes to the merits of the case and raises the question whether a cause of action exists. It must be borne in mind that the count relied on is not in contract. It is clear that the defendant could not be held either on a contract of insurance or on a contract to insure, under the circumstances of this case. The count is in tort, for the negligence of the agent in failing to forward the application with due diligence, and is based on the theory that if the application had been forwarded within a reasonable time,

it would have been accepted and the policy would have been issued for term insurance, prior to the applicant's death, in other words, that, but for the agent's negligence, the applicant's life would have been insured for $5000, to which the plaintiffs would now be entitled under the terms of the policy that would have been issued, but which they are now deprived of because of the negligence of defendant's agent. We need not set out all the evidence adduced to show that if the agent had performed his duty, the term insurance would have been obtained before the applicant's death. There is and can be no question that the jury were fully justified in so finding from the evidence. ·The questions now raised are questions of law as to whether, assuming these facts, the defendant is liable.

In the first place, it is argued on behalf of the defendant, that the amount paid by the applicant was for the permanent insurance and that there was no consideration for the term insurance. This distinction does not appear from the evidence. It is stated in the receipt that the amount paid was a deposit "upon the application for insurance" and the application was made for "term" as well as permanent insurance. It may be that the amount paid was not a consideration for either kind of insurance, but that it was, as stated in the receipt, a mere "deposit"—to become a consideration or not according to circumstances. It may be also that the application for term insurance was a mere offer which could be withdrawn at any time before accepted, and that the defendant was not bound to accept it. If so, the same is equally true of the permanent insurance. But these questions are immaterial. The question is, was there a duty to forward the application, not was there a consideration for what might be done in case it should be forwarded? The action is not upon a contract for term insurance but in tort for negligence whereby term insurance was prevented and but for which there would have been term insurance. If it is necessary to prove a contract and a consideration in order to prove a duty to forward, it may well be held that there was an implied contract, if indeed not an

express oral contract, to forward, and that the consideration therefor was the making an application at the solicitation of the agent, the submission, at the request of the agent, to an examination by the examining physician, and the making a deposit with the agent. It may be that the agent himself might properly have returned the application to the applicant without having forwarded it, but, if so, he should have done so within a reasonable time. Having received the application, having accepted the trust, he was, under the circumstances, bound either to forward it or to return it within a reasonable time.

Secondly, assuming that there was a duty to forward within a reasonable time and that the agent was negligent in not so doing, it is argued that the defendant is not liable, whatever may be the rule as to the liability of the agent himself. This is the point upon which the case really hinges. It is not without difficulty. There are no actual decisions upon it, so far as we are aware. It is argued that an action for negligence would not lie if the application had been pigeonholed by the defendant itself, and that a principal cannot be held liable for an act or omission of its agent if it could not be held for a similar act or omission of its own. We need not express an opinion upon the question whether an insurance company would be liable or not for negligence in failing to act upon an application within a reasonable time, in case the application had been made directly to the company or had been forwarded to it by its agent. It may be that even the company would be bound to accept or reject the application within a reasonable time. But conceding for the purpose of argument that there would be no liability in such case, cannot the present case be distinguished from it? The company acts judicially in passing upon an application, the agent acts ministerially in forwarding it. Further, in the nature of the case, the company itself could not be guilty of negligence in failing to forward an application, for the reason that there could be no forwarding at all when once the company had received the application. It is true, the company, being a corporation, can act

only through officers or agents in any case, but the directors or managers at the home office represent the company in a very different way from that in which its agents to solicit or receive applications do. But the very fact that a corporation can act only through officers or agents constitutes a reason for holding it to a stricter responsibility for the acts of its agents than would otherwise be necessary. As between innocent parties—the company and the applicant—should not the loss due to the negligence of a third party—the agent—fall upon the company, which selected the agent and held him out as worthy of trust? Should not a principal suffer for the negligence of his own agent, rather than the person whose action has been induced by such agent acting within the scope of his authority? Does an applicant acquire no rights by making an application, submitting to an examination, making a deposit, and forbearing to obtain other insurance, on the faith induced by the agent that the application would be duly forwarded and passed upon? May the company with impunity through its directors, or at least through its soliciting agents, receive an application and a deposit, and take no action whatever? Those engaged in the insurance business need no reminding as to the importance of prompt action in such matters. If they should not care for a risk, they should not mislead an applicant into believing that they would at least act upon his application and so cause him to delay applying to some other company. To hold the company liable in this case is in effect to hold, as equity holds, that that which ought to have been done was done. The effect is to place both parties in the same position that they would have been in, if there had been no negligence,—not to hold the company liable for damages caused by the negligence, but to hold it to a liability that would have existed if there had been no negligence. As above stated, there are no decisions upon the point in question. In *Stewart v. Helvetia Ins. Co.*, 102 Cal. 218, cited by defendant, the agent failed to forward an application for renewal of fire insurance until after the loss. The court held that while this "might

make the agent liable to plaintiff for the damage sustained by him growing out of such neglect, it did not have the effect to create a binding contract for renewal" between the applicant and the company. In that case the action was in contract, not, as here, in tort for the negligence. The court, however, intimated that an action might lie for the negligence against the agent at least, in other words, that there was a duty to forward. *Trask v. German Ins. Co.*, 53 Mo. App. 625, would seem to be a similar case, so far as we can judge from its digest in 9 Gen. Dig. Tit. Ins., Secs. 37, 376. In *Walker v. Farmers' Ins. Co.*, 51 Ia. 679, referred to by defendant, the agent failed to forward an application for fire insurance until after the loss. The trial judge was of the opinion that the company was liable for such negligence of its agent and charged the jury that "if you find that said agent neglected to forward such application for rejection or approval within a reasonable time, considering all the circumstances, then the defendant must be held liable for any loss occasioned by such neglect." On appeal the Supreme Court held that, though this instruction might be correct law, it was inapplicable to that case because the action was brought on the contract and not for the negligence. The court said: "It may be, but the point we do not decide, that defendant is liable for the neglect of its agent as contemplated in this instruction; but in order to recover for such negligence the action must be based thereon." In *Perkins v. Washington Ins. Co.*, 4 Cow, 645, cited by plaintiffs, the agent was authorized, not merely to receive and forward applications as in this case, but to make contracts of insurance, to take effect, however, only "when the premium should be paid, and should be received at New York," and "provided the office should recognize the rate of premium, and be otherwise satisfied with the risk." The agent made such a contract but the premium was not received at New York until after the loss. Just as, according to plaintiffs' theory, in the present case the agent retained the application in order that he might send a batch at once, and the company declined the risk

without considering its merits but because it had already been informed of the applicant's death, so in the New York case the agent retained the premium in order that he might send a number of premiums together, and the company declined the risk without considering its merits but because it had already learned of the loss. The suit was in equity and based upon contract, the object being to compel either payment of the amount agreed to be insured or execution of the policy. Chancellor Kent held that the company was not liable, but on appeal his decision was reversed by the Court of Errors, in opinions by Woodworth, J., and Colden, Senator. We need not go into the grounds upon which the Chancellor and the Appellate Court differed. They related principally to the question whether the company could arbitrarily refuse to approve a contract to insure made by its agent, or could refuse only upon a showing that the contract did not conform to the instructions given to the agent and above set forth. These grounds of difference did not relate to the question of the defendant's liability for the negligence of its agent, but nevertheless Senator Colden expressed an opinion upon this point as follows: "Suppose an action had been brought against Russell (the agent) for not sending the premium in due time, can there be a doubt but that the appellant would have recovered in a court of law; and that the measure of damages would have been the amount which was to have been insured, and for which the premium was paid. The plaintiff, in such an action, would only have had to have shown that if the premium had been duly forwarded, the risk would have been taken, and he would have had the benefit of an insurance. And so in this case, when Russell, who was the agent of the respondents to receive and remit the premium, has withheld it, I think the respondents are to be held responsible, as they would have been, if he had performed his duty." In *Greenwich Ins. Co. v. Waterman*, 54 Fed. Rep. 839, the Circuit Court of Appeals raised a similar question but, while referring to *Perkins v. Ins. Co.*, *supra*, as having answered the question in the affirmative, de-

clined to express an opinion upon it themselves, because the action was based, not on the negligence, but on a contract to insure. On the whole, while there are no actual decisions upon the point, the drift of opinion seems to be in favor of the proposition that the insurance company is liable for the negligence of its agent in failing to forward applications or premiums within a reasonable time.

Thirdly, as to the measure of damages; the admissibility of evidence to prove what the company would have done if the agent had performed his duty; and whether the negligence of the agent was the proximate cause of the loss to the plaintiffs; see *State Ins. Co. v. Jamison*, 79 Ia. 245; also *Perkins v. Ins. Co., supra.*

The remaining exceptions were taken to the refusal to give certain requested instructions to the jury; to the verdict as being contrary to the law and the evidence; and to the overruling of a motion for a new trial. These need not be separately considered, as the questions raised thereby, in so far as they are relied on, have been disposed of under the exceptions already considered.

The exceptions are overruled.

*Kinney & Ballou*, for plaintiffs.

*A. G. M. Robertson*, for defendant.