HARRY WEATHERBY AND ELI F. STEWART, PARTNERS, TRADING AS WEATHERBY AND STEWART, PLAINTIFFS, v. AETNA INSURANCE COMPANY, DEFENDANT.

Decided June 12, 1933.

Before HENRY H. ELDREDGE, Circuit Court judge.

For the plaintiffs, *Riggins & Davis*.

For the defendant, *Carr & Carroll*.

ELDREDGE, C. C. J. The complaint in the instant suit sets up that on July 1st, 1929, the Aetna Insurance Company issued a policy to the plaintiffs, trading as Weatherby and Stewart, in the sum of $3,000, covering certain personal property, consisting of such articles as are usually kept in a country store. The policy was for a term of one year, running from July 1st, 1929, to July 1st, 1930. Upon expiration of the said policy and on or about the 1st of July, 1930, the defendant, upon its own volition and without any solicitation or request therefor by the plaintiffs, renewed the said policy, and then and there duly issued and delivered to plaintiffs its fire insurance policy under the terms of which it insured the plaintiffs against all direct loss or damage by fire to an amount not exceeding $3,000 on the property therein described. The premium of $52.80 was paid.

The complaint then further alleges that the property insured was destroyed by fire on August 18th, 1930, and that due proof was made thereof. It then alleges that on May 26th, 1930, a chattel mortgage was given to the Swedesboro National Bank covering the property insured, and sets up the following extracts from the policy:

"This entire policy, unless provided by agreement endorsed hereon or added hereto, shall be void * * * if the subject of insurance be personal property and be or become encumbered by a chattel mortgage."

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning the insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject-matter thereof, whether before or after a loss."

It then further alleges in paragraph 9 as follows:

"At the time the policy of insurance was issued and delivered to the plaintiffs by the defendant, the defendant, through its agent, Harold S. Twiss, who signed and issued said policy, knew that the aforesaid chattel mortgage had been

executed and delivered by the plaintiffs to the Swedesboro National Bank."

There then follow two paragraphs, the first setting up the allegation that the defendant was a specialist in the insurance business; that it invited the plaintiffs to rely upon it; that the policies were long and full of fine print and not easily read or understood by a layman; and the second that the plaintiffs were ignorant of its terms and relied wholly upon the defendant to see that they were furnished with a valid and legal enforceable policy of fire insurance.

Paragraph 12 of the complaint then alleges:

"On or about the 24th day of March, 1931, plaintiffs instituted an action at law on the said policy against the aforesaid defendant in the Supreme Court of the State of New Jersey to recover their loss under said policy. After answer and reply filed, the said Supreme Court, on motion of the defendant, struck out the complaint and the reply of the plaintiffs and entered judgment final in favor of the defendant," after which paragraph 13 charges as follows:

"Defendant, at the time it issued and delivered the policy of insurance to plaintiffs, was negligent in that it, upon its own volition and without any solicitation or request therefor made by the plaintiffs, knowing that the plaintiffs relied upon it as a specialist in fire insurance to furnish them with a valid fire insurance policy, and having knowledge at the time of its execution and delivery to plaintiffs, of the existence of the chattel mortgage, which, according to the provisions of the policy of insurance, rendered the policy void unless a waiver in the nature of a rider was attached thereto, issued and delivered to the plaintiffs its said policy of fire insurance and accepted the premium therefor, knowing that it was delivering to plaintiffs a void policy, thus leading the plaintiffs to believe that they were properly, legally and fully protected."

Counsel for the defendant now moves to strike the complaint on seven separate grounds, which need not be here set out in full.

It will be noted from paragraph 12 of the complaint that the plaintiffs had already instituted suit on their policy, and

their complaint in the prior suit was stricken. See *Weatherby and Stewart* v. *Astna Insurance Co.,* 9 *N. J. Mis. R.* 1260; 157 *Atl. Rep.* 169. But counsel for the plaintiffs contend that the defendant was under a duty imposed by law to use due care in insuring the property of the plaintiffs and in issuing and delivering the policy; that defendant, in pursuance of that duty, was negligent, and such negligence was the cause of loss to the plaintiffs; and further, that the previous suit in contract was on the policy and does not preclude this suit, which is in tort for the breach of a duty owing independent of the contract but growing out of the relationship assumed by the defendant in undertaking to insure the property of the plaintiffs.

The present action, then, does not sound in contract but in tort. The plaintiffs seek to recover not under the policy, but because they allege the company, through the negligence of its agent or as principal, gave them a policy which was either void or voidable. They quote 26 *R. C. L.* 527, for their definition of negligence, as follows:

"An injurious act or omission not done or omitted with any intent to produce harm, nor in the invasion of any distinct or absolute legal right of another, nor in violation of any positive law or special or absolute obligation; but which, in the exercise of due diligence and skill, might have been forseen and prevented, and the person upon whom the injury has fallen may have been one for whose safety and protection the defendant was, at the time, under some qualified or limited obligation," and then assert that the defendant was under some qualified or limited obligation to provide for the safety and protection of plaintiffs.

In support of this theory they cite a long line of cases holding that an insurance company is effected with a public interest; and that they are *"quasi*-public corporations," and among other authorities cite *O'Gorman* v. *Hartford Insurance Co.,* 105 *N. J. L.* 642; 146 *Atl. Rep.* 370, and *Attorney-General* v. *Firemen's Insurance Co.,* 74 *N. J. Eq.* 372; 73 *Atl. Rep.* 80. After a long discussion of this question, Mr. Justice Garrison, in the latter case, said: "The conclusion

we reach from these contracts is that the business of the defendant is in point of fact one that directly affects the interest of the public, and that such public interest has been recognized as a subsisting one by the legislature of the state, and that in point of fact the business of the defendant is affected with a public interest." He thereupon held that the attorney-general might enjoin the company from making a contract that was *ultra vires*. It was upon this same theory, we take it, that the legislature permitted the insurance companies to fix rates which all companies must observe, and also put them under the supervision of the department of banking and insurance and prescribed the form of policy they are required to use.

These very regulations, however, seem to the court to negative the claim of the plaintiffs in this suit. By reason of the fact that they are *quasi*-public corporations, the legislature has prescribed, in certain respects, what their duties are, particularly as regard the form of contract, but nowhere does the legislature charge them with as broad a duty as the plaintiffs herein claim. Except with respect to such changes as have been made by legislative enactment, it does not appear that in our law there is any greater duty imposed upon the parties entering into an insurance contract than is required in other contracts.

We are not unmindful of what appears to be a trend in the law of some jurisdictions to lean toward the contention of the plaintiffs. *In Boyer* v. *State Farmers' Insurance Co.,* 86 *Kan.* 442, a delay of four days in issuing a policy for hail insurance, which was held by the agent for that period of time and at the end of which time the crop was destroyed, was deemed sufficient to justify a recovery in tort for negligence, and in *Duffie* v. *Bankers Life,* 139 *N. W. Rep.* (*Iowa*) 1087, it was held that an action of tort would lie for delay in issuing a policy where an application was made for life insurance on June 8th and on July 9th, the applicant died before the policy was issued. So in *Carter* v. *Manhattan Life Insurance Co.,* 11 *Hawaii* 69, under the same facts, a thirty-day delay was held actionable.

These cases are interesting as showing a tendency to apply the law of negligence to insurance companies. They are readily distinguishable on their facts, however, and might or might not be followed in this state.

Counsel's brief contains a long discussion concerning what is alleged to be a confusion in this state between estoppel and waiver. Little need be said here, however, because in the first place the suit is not based upon estoppel, but upon negligence; and in the second place, the question of estoppel was disposed of in the prior action above referred to when suit was brought on the policy.

Neither is it necessary to discuss the question of contributory negligence, which of itself raises a serious question in this case.

Whatever may ultimately be our court's view with respect to the duties imposed upon the insurer, there can be little doubt as to the duty of the assured, for as late as 1932, in *Hudson Casualty Co.* v. *Garfinkel,* 111 *N. J. Eq.* 70; 161 *Atl. Rep.* 195, the court cites with approval *Crescent Ring Co.* v. *Travelers' Indemnity Co.,* 102 *N. J. L.* 85; 132 *Atl. Rep.* 106.

In the light of the views herein expressed, the complaint will be dismissed.